# IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLIN ANDERSON, an individual and resident of Cass County, Illinois; | : <br> : <br> : |
| DAVE CLARK, an individual and resident of Cumberland County, Illinois; | : <br> : <br> : |
|     *Plaintiffs*, | : No. <br> : <br> : |
| v. | : <br> : |
| KWAME RAOUL, in his official capacity as Attorney General of Illinois; | : <br> : <br> : |
| BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; | : <br> : <br> : |
| CRAIG MILLER, in his official capacity as State's Attorney of Cass County, Illinois; | : **COMPLAINT FOR DECLARATORY** <br> : <br> : **AND INJUNCTIVE RELIEF** |
| BRYAN ROBBINS, in his official capacity as State's Attorney of Cumberland County, Illinois; | : <br> : <br> : |
|     *Defendants*. | : <br> : |

Plaintiffs, CARLIN ANDERSON and DAVE CLARK (collectively, "Plaintiffs") by and through their undersigned counsel, bring this Complaint against Defendants, officials of the State of Illinois and its counties responsible for enforcing a statute infringing the right of law-abiding, peaceful citizens to keep and bear suppressors, commonly possessed arms, for lawful purposes. Plaintiffs allege as follows:

## INTRODUCTION

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, Plaintiffs, and all other law-abiding Illinois citizens, have a fundamental, constitutionally guaranteed right to keep and bear common firearms for defense of self and family and for other lawful pursuits.

2. But the State has enacted, and Defendants enforce, a flat prohibition on any "device or attachment of any kind designed, used or intended for use in silencing the report of any firearm[.]" See 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6). This prohibition enacts a complete ban on the possession of suppressors in Illinois.

3. A suppressor is a safe, effective, and commonly used device that decreases the noise level of a gunshot. Suppressors are not dangerous. In fact, suppressors *increase* safety. Suppressors decrease the risk of permanent hearing damage, prevent accidents from misheard commands in firearms training, improve self-defense and defense of the home, reduce noise pollution in neighborhoods and communities, and help protect hunters and those nearby. Meanwhile, suppressors are very rarely ever used in criminal activity.

4. The State's enactment, and Defendants' active enforcement, of the criminal prohibition on common suppressors denies law-abiding individuals who reside in the State,

1

including Plaintiffs, their fundamental, individual right to keep and bear common arms.

5. In *N.Y. State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court stated the test for Second Amendment violations: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2127, 2129–30.

6. The plain text of the Second Amendment covers the conduct the Plaintiffs wish to engage in because it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 2132 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). The Supreme Court has defined "arms" under the Second Amendment broadly with a "general definition" that includes all "modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. Federal statutes likewise define and regulate suppressors as a "firearm." *See* 26 U.S.C. § 5845(a)(7); 18 U.S.C. § 921(a)(3)(C).

7. By prohibiting Plaintiffs from possessing and carrying suppressors, Illinois has prevented Plaintiffs from "keep[ing] and bear[ing] Arms" within the meaning of the Amendment's text. U.S. CONST. amend. II. As a result, "[t]o justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

8. Defendants cannot demonstrate any such thing. *Heller* and *Bruen* have provided the *sole* historical tradition that can remove an arm from the Second Amendment's protective scope—the tradition of banning dangerous and unusual weapons. *Heller*, 554 U.S. at 627; *Bruen*, 142 S. Ct. at 2143. To be banned, a firearm must be both "dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). But suppressors are neither

dangerous *nor* unusual. Arms that are in common use, as the ordinary suppressors Illinois has banned unquestionably are, cannot be unusual. And suppressors, which actually increase the safety of a firearm, cannot be dangerous. Suppressors do not meet the Supreme Court's threshold for banning arms, and the Illinois laws challenged herein must be held unconstitutional.

## JURISDICTION & VENUE

9. This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988.

11. Venue lies in this Court under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## PARTIES

**Plaintiffs**

12. Plaintiff Carlin Anderson is a natural person, a resident of Cass County, Illinois, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms.

13. Plaintiff Dave Clark is a natural person, a resident of Cumberland County, Illinois, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms.

**Defendants**

14. Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws and has concurrent authority with State's Attorney's to initiate prosecutions on behalf of the People of Illinois. *See People v. Buffalo Confectionary Co.*, 401 N.E.2d 546, 549 (Ill. 1980). This authority includes the

authority to enforce the State's general prohibition on the possession of suppressors.

15.     Defendant Brendan F. Kelly is sued in his official capacity as the Director of the Illinois Department of State Police. As Director, Kelly is responsible for managing and controlling enforcement of the State's criminal laws by the State Police, *see* 20 ILL. COMP. STAT. ANN. 2610/2, 2610/16, including the State's general prohibition on the possession of suppressors.

16.     Defendant Bryan Robbins is sued in his official capacity as State's Attorney for Cumberland County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for [his] county, in which the people of the State or county may be concerned," including violations of Illinois' ban on suppressors. 55 ILL. COMP. STAT. ANN. 5/3-9005(a)(1).

17.     Defendant Craig Miller is sued in his official capacity as State's Attorney for Cass County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for [his] county, in which the people of the State or county may be concerned," including violations of Illinois' ban on suppressors. *Id*.

## FACTUAL ALLEGATIONS

### I.     ILLINOIS' UNCONSTITUTIONAL SUPPRESSOR BAN.

18.     Illinois bans "any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6) ("the Suppressor Ban").

19.     Suppressors are sometimes referred to by the misnomer of "silencer," although suppressors do not silence firearms. "[T]he term 'silencer' is a misnomer, in that—despite movie fantasies—a noise suppressor reduces decibels, but does not actually 'silence' the discharge of a firearm. *See* The American Suppressor Association (ASA), YOUTUBE, http://bit.ly/3KlM4yj

(demonstrating the use of suppressors and their decibel level reduction). Noise may be muffled or diminished, and maybe only by a few decibels at that, but it can still be heard." Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 CUMB. L. REV. 35, 36 (2016) ("Halbrook"); *see also United States v. Bolatete*, 977 F.3d 1022, 1028 (11th Cir. 2020) (referring to "suppressors or silencers" as "the same thing"). Suppressors are covered by the Illinois Suppressor Ban.

20. If a person knowingly possesses a suppressor in Illinois, the person commits the crime "of unlawful use of weapons." 720 ILL. COMP. STAT. ANN. 5/24-1(a).

21. Under Illinois law, possessing a suppressor is a Class 3 felony. 720 ILL. COMP. STAT. ANN. 5/24-1(b).

22. Under Illinois law, possessing a suppressor in certain locations, including in "residential property owned, operated or managed by a public housing agency or leased by a public housing agency," "in a public park," "in any conveyance owned, leased, or contracted by a public transportation agency," "or on any public way within 1,000 feet of the real property comprising any school, public park, courthouse, public transportation facility, or residential property owned, operated, or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development" constitutes a Class 2 felony which carries a sentence of "a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILL. COMP. STAT. ANN. 5/24-1(c)(1).

23. The Suppressor Ban bans all suppressors by making it a felony to possess a "device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6).

24. Federal law defines suppressors as firearms subject to the Second Amendment. Suppressors are regulated under the National Firearms Act, which defines suppressors as a "firearm." 26 U.S.C. § 5845(a)(7). The Gun Control Act also defines silencer (a synonym for suppressor) as a "firearm." 18 U.S.C. § 921(a)(3)(C).

25. The Supreme Court likewise defines "arms" under the Second Amendment broadly with a "general definition" that includes "modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. The Court has also recognized that "armour of defence" has historically been included in the definition of arms. *Heller*, 554 U.S. at 581.

### A.     Illinois Has Criminalized Suppressors Despite Their Common Use.

26. Suppressors have been broadly permitted and commonly used for over one hundred years.

27. In 1908, Hiram Percy Maxim applied to patent a device that could be attached to a firearm to reduce gunshot noise. He dubbed his invention a "silencer." Silent Firearm, U.S. Patent No. 958,935 (filed Nov. 30, 1908), https://bit.ly/3IAEQoV. Several years later, Maxim explained that he invented the device to reduce sound disturbance caused by firearms. HIRAM PERCY MAXIM, EXPERIENCES WITH THE MAXIM SILENCER 2–4 (1915), https://bit.ly/3EaJGqc.

28. President Theodore Roosevelt possessed a suppressor, the Maxim Silencer. Max Slowik, *Teddy Roosevelt's Suppressed 1894 Winchester*, GUNS.COM (May 18, 2012), https://bit.ly/3YJzuwG.

29. The common use of suppressors has continued into the modern day. Millions of suppressors are owned by law-abiding Americans. As of 2021, over 2.6 million suppressors were legally registered in the United States. *Firearms Commerce in the United States: Annual Statistical Update 2021*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (2021), at 16, https://bit.ly/3E6kDV6.

30. The lawful use of suppressors is significant. Between 2016 and 2020, for example, suppressors were the most likely item to be listed on a National Firearms Act weapons application form. *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (2022), at 99, https://bit.ly/3YX3fdD.

31. Suppressors are widely permitted throughout the United States. Contrary to the Illinois Suppressor Ban, 42 States permit their citizens to possess suppressors.

32. Federal law likewise permits and regulates the possession of suppressors. To lawfully own a suppressor under federal law, individuals must register the suppressor, obtain permission, submit fingerprints, and pay a $200 tax. *See generally* 26 U.S.C. § 5845.

33. Suppressors are also widely permitted around the world. *See* Halbrook at 76–78 (cataloging the many countries that permit suppressors). Indeed, several European countries permit suppressors to a far greater extent than Illinois does. *See generally id.* To provide just a few examples, in Germany, suppressors "are allowed for hunting and may be required for professional hunters and certain others for hearing protection and noise pollution." *Id.* at 77. In Norway, "[s]uppressors may be freely transferred and possessed if the person has a gun license," and a "wide selection may be ordered online." *Id.* In the United Kingdom, suppressors are "widely advertised" and may be acquired for "good reason," including "work, sport, or leisure." *Id.* at 78.

**B.    Illinois Has Criminalized Suppressors Despite Their Many Lawful, Safe, and Common Uses.**

34. Suppressors have many common, legal uses. Firearm suppressors are widely accepted and very infrequently used for criminal activity. Although not required under the Second Amendment, suppressors actually *increase* the safety of firearm use.

35. First, suppressors are commonly used for hearing protection. The National Hearing Conservation Association (NHCA) Task Force on Prevention of Noise-Induced Hearing Loss from

7

Firearm Noise recommends the use of suppressors to reduce the risk of hearing loss. Michael Stewart et al., *NHCA Position Statement: Recreational Firearm Noise*, NAT'L HEARING CONSERVATION ASS'N (Mar. 16, 2017), https://bit.ly/3EdVIir. The CDC has similarly recommended the use of suppressors for hearing protection. The CDC stated: "The only potentially effective noise control method to reduce . . . noise exposure from gunfire is through the use of noise suppressors that can be attached to the end of the gun barrel." Lilia Chen & Scott E. Brueck, *Noise and Lead Exposures at an Outdoor Firing Range — California*, NAT'L INST. FOR OCCUPATIONAL SAFETY & HEALTH (2011), at 5, https://bit.ly/3YSzcDD. Without the use of suppressors, almost all gunshots generate sound greater than 140 decibels. Michael Stewart, *Recreational Firearm Noise Exposure*, AM. SPEECH-LANGUAGE-HEARING ASS'N (2017), https://bit.ly/40W2MKr. For example, a "small .22-caliber rifle can produce noise around 140 dB, while big-bore rifles and pistols can produce sound over 175 dB." *Id.* And "noise greater than 140 dB can permanently damage hearing." *Id.* With a suppressor, however, the sound of a firearm can fall within safer levels. For example, the sound of a Smith & Wesson 9mm pistol with a suppressor can be as low as 127–130 decibels. David Kopel, *The Hearing Protection Act and 'Silencers'*, WASH. POST (June 19, 2017), https://wapo.st/3IoNCWQ. An AR-15 rifle with a suppressor, meanwhile, makes a noise around 132 decibels. Glenn Kessler, *Are Firearms with a Silencer 'Quiet'?*, WASH. POST (Mar. 20, 2017), https://wapo.st/3Xt9LHT. Indeed, suppressors can even be safer and more effective for hearing protection than traditional forms of hearing protection like ear plugs or earmuffs. *Id.*

36. Second, suppressors are commonly used to protect hunters and those around them. Despite the associated hearing risks, up to 95% of adult hunters report not wearing hearing protection while hunting. Deanna K. Meinke et al., *Prevention of Noise-Induced Hearing Loss*

*from Recreational Firearms*, NAT'L INST. OF HEALTH: NAT'L LIBR. OF MED. (Oct. 10, 2017), https://bit.ly/3KfK7Dz. This is because hunters need to be able to hear their surroundings in order to hunt effectively and safely. Hunters must be able to hear game as it approaches and must be able to differentiate between the sounds of game and the sounds of pets or people. Suppressors reduce noise from gunshots while allowing hunters to hear other sounds and thus hunt effectively and safely.

37. Third, suppressors are commonly used as a public courtesy to prevent noise pollution in neighborhoods and communities. Although suppressors do not silence gunshots, they reduce the decibel level of gunshots and thus prevent noise pollution. In fact, this was the reason suppressors were invented. HIRAM PERCY MAXIM, EXPERIENCES WITH THE MAXIM SILENCER 2–4 (1915).

38. Fourth, suppressors are commonly used to make firearm training safer and to improve the accuracy of firearms. Suppressors reduce recoil and help reduce muzzle flinch, allowing for greater control of a firearm and improved accuracy. *Do Suppressors Reduce Recoil?*, KINETIC RSCH. GRP., https://bit.ly/3I6A1Cb. Some firearms safety instructors prefer their students to use suppressors because it prevents them from developing a flinch at the firing of a gun. David Kopel, *The Hearing Protection Act and 'Silencers'*, WASH. POST (June 19, 2017), https://wapo.st/3IoNCWQ. Further, replacing earmuffs or ear plugs with suppressors increases a firearm user's ability to hear commands and warnings, which can help reduce accidents at a firearm range and elsewhere. *See* Halbrook at 34.

39. Fifth, suppressors are commonly used to make self-defense and defense of the home safer and more effective. In the event that an individual must use a firearm for self-defense, the individual may not have ear muffs or ear plugs at his or her disposal. Accordingly, a suppressor

9

allows the individual to exercise self-defense or defense of the home while avoiding the risk of permanent hearing loss. And the individual retains the ability to effectively communicate with other household members and hear outside noise or signals which may aid self-defense or defense of the home.

40. By contrast, suppressors are very rarely used for criminal purposes. *See* Paul A. Clark, *Criminal Use of Firearm Silencers*, 8 W. CRIM. REV. 44 (2007). "Overall numbers certainly suggest that silencers are a very minor law enforcement problem." Paul A. Clark, *Criminal Use of Firearm Silencers*, WESTERN CRIMINOLOGY REVIEW (2007), at 51, https://bit.ly/41mz6pM. One study estimated the number of suppressor-related prosecutions to be just 30 to 40 cases per year out of a total of 75,000 to 80,000 federal criminal prosecutions. *Id.*

41. In 2017, acting ATF Deputy Director Ronald B. Turk admitted that suppressors "are very rarely used in criminal shootings." In an ATF White Paper, the Deputy Director explained:

> In the past several years, opinions about silencers have changed across the United States. Their use to reduce noise at shooting ranges and applications within the sporting and hunting industry are now well recognized. At present, 42 states generally allow silencers to be used for sporting purposes….
>
> While DOJ and ATF have historically not supported removal of items from the [National Firearms Act of 1934], the change in public acceptance of silencers arguably indicates that the reason for their inclusion in the [National Firearms Act of 1934] is archaic and historical reluctance to removing them from the [National Firearms Act of 1934] should be reevaluated. ATF's experience with the criminal use of silencers also supports reassessing their inclusion in the [National Firearms Act of 1934]. On average in the past 10 years, ATF has only recommended 44 defendants a year for prosecution on silencer-related violations; of those, only approximately 6 of the defendants had prior felony convictions. Moreover, consistent with this low number of prosecution referrals, silencers are very rarely used in criminal shootings. Given the lack of criminality associated with silencers, it is reasonable to conclude that they should not be viewed as a threat to public safety necessitating [National Firearms Act of 1934] classification, and should be considered for reclassification under the [Gun Control Act of 1968].

Ronald Turk, *White Paper: Options to Reduce or Modify Firearms Regulations*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES (Jan. 20, 2017), at 6–7, https://bit.ly/3RZ7bYZ.

42. This makes sense, as suppressors are not of much use to criminals. After all, suppressed gunshots are by no means "silent." For example, the 127 decibels generated by a suppressed 9mm pistol are comparable to a firecracker or an ambulance siren. Brian J. Fligor, *Prevention of Hearing Loss from Noise Exposure*, BETTER HEARING INST. (2011), at 8, https://bit.ly/3YUv6uG. Accordingly, criminals who shoot suppressed weapons can still be easily heard. Suppressors can reduce or prevent hearing damage but do not silence criminal activity.

43. The Illinois Suppressor Ban is, thus, a ban on keeping and bearing arms that are commonly possessed and used for lawful purposes, including hearing protection, hunting, public courtesy, firearm accuracy and training, and self-defense in the home.

44. Illinois will not be able to show that history and tradition support an outright ban on the possession of common suppressors by law-abiding citizens. In fact, the opposite is true. Suppressors have been lawfully used for purposes like reducing noise pollution in neighborhoods since the early 20th century. HIRAM PERCY MAXIM, EXPERIENCES WITH THE MAXIM SILENCER 2–4 (1915). Suppressors were not regulated at the federal level until Congress enacted the National Firearms Act in 1934. And even then, the Federal Government did not ban or criminalize suppressors for ordinary citizens, as Illinois has, but merely subjected them to a tax, background, and registration scheme which remains in effect to this day. Similarly, on the State level, historical practice supports the lawful possession of suppressors. Illinois's outright ban on law-abiding citizens possessing common suppressors is an extreme outlier that finds no justification in history or tradition.

## II. THE EFFECT ON PLAINTIFFS.

### Dave Clark

45. Dave Clark is a law-abiding, responsible, adult resident of Cumberland County, Illinois.

46. The Suppressor Ban prevents Clark from using suppressors in Illinois.

47. But for the Suppressor Ban, Clark would intend to use suppressors in Illinois.

48. Clark regularly engages in hunting and participates in long-range rifle competitions. Clark would find suppressors highly beneficial in both activities. But for the Suppressor Ban, Clark would use suppressors to increase safety and effectiveness in hunting and to protect against hearing damage, among other beneficial and lawful purposes.

### Carlin Anderson

1. Carlin Anderson is a law-abiding, responsible, adult resident of Cass County, Illinois.

2. In 2015, Anderson purchased a suppressor. Anderson still owns the suppressor but cannot lawfully possess it in Illinois because of the Suppressor Ban. Thus, Anderson was forced to transport his suppressor out-of-state and surrender it to the care of a relative. Anderson can no longer access his suppressor in Illinois because of the Suppressor Ban.

3. The Suppressor Ban prevents Anderson from using suppressors in Illinois.

4. But for the Suppressor Ban, Anderson would intend to purchase more suppressors and place a suppressor on every firearm he owns.

5. But for the Suppressor Ban, Anderson would use suppressors for both hunting and target practice. Because of the Suppressor Ban, however, Anderson does not hunt with a firearm at all. Anderson would use suppressors to increase safety and effectiveness in hunting and to protect against hearing damage, among other beneficial and lawful purposes.

12

## COUNT ONE

**42 U.S.C. § 1983 - Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution.**

6. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

7. The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

8. The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750, 805–06 (2010); *id.* at 805 (Thomas, J., concurring).

9. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (citations omitted). *See also Bruen* at 2132 ("[E]ven though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

10. The Supreme Court has stated the test for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

11. The suppressors at issue in this case are bearable arms in common use for lawful

13

purposes that law-abiding people possess by the millions. They are, therefore, neither dangerous nor unusual and cannot be banned.

12. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

13. Plaintiffs are law-abiding, peaceable citizens of Illinois and the United States who wish to possess suppressors banned by Illinois.

14. Defendants enforce the Suppressor Ban under color of State law. 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6).

15. Defendants have violated Plaintiffs' right to keep and bear arms by precluding them from being able to purchase or possess suppressors because Defendants enforce 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6).

16. Defendants' enforcement of 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6), and the statutes, regulations, customs, policies, and practices related thereto, is an infringement and an impermissible burden on Plaintiffs' right to keep and bear arms pursuant to the Second and Fourteenth Amendments to the United States Constitution.

17. Defendants' enforcement of 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6), and the statutes, regulations, customs, policies, and practices related thereto forces Plaintiffs either to comply with the unconstitutional mandate—thereby being prevented from exercising their rights under the Second and Fourteenth Amendments to the United States Constitution—or be subjected to criminal prosecution.

18. Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their

fundamental constitutional right to keep and bear arms.

## PRAYER FOR RELIEF

19. WHEREFORE, Plaintiffs respectfully pray for the following relief:

a. Declare that the ban on commonly possessed suppressors, 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6), and all related laws, regulations, policies, and procedures, violate the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

b. Enjoin each Defendant, each Defendant's respective employees, officers, agents, and representatives, and all those acting in concert or participation with him or her, from enforcing the Illinois ban on suppressors, consisting of 720 ILL. COMP. STAT. ANN. 5/24-1(a)(6) and all related regulations, policies, and/or customs designed to enforce or implement the same;

c. Award Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

d. Grant any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: February 27, 2023                                Respectfully Submitted,

/s/David G. Sigale
David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

                    David H. Thompson\*
                    Peter A. Patterson\*
                    Athanasia O. Livas\*
                    COOPER & KIRK, PLLC
                    1523 New Hampshire Avenue, N.W.
                    Washington, D.C. 20036
                    (202) 220-9600
                    (202) 220-9601 (fax)
                    dthompson@cooperkirk.com
                    ppatterson@cooperkirk.com
                    alivas@cooperkirk.com

                    \**Pro hac vice* application forthcoming


                    Attorneys for Plaintiffs